AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  **3:21MJ333** |
| DELL DESKTOP COMPUTER, TWO EXTERNAL HARD DRIVES, | ) | |
| HP PAVILION DESKTOP COMPUTER, SAMSUNG TABLET | ) | |
| COMPUTER & ONN TABLET COMPUTER CURRENTLY | ) | |
| STORED AT HSI, 9875 REDHILL DR, BLUE ASH, OH | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A

located in the _____ SOUTHERN _____ District of _____ OHIO _____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252(a)(2)(B) | Receipt or Distribution of Child Pornography |
| 18 U.S.C. §2252A(a)(2) | Receipt or Distribution of Child Pornography |

The application is based on these facts:

### SEE AFFIDAVIT IN SUPPORT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

SA CHRISTOPHER WALLACE, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

FaceTime
_____ *(specify reliable electronic means).*

Date:  9/2/21
_____

_____
: signature

City and state:  DAYTON, OHIO
_____  U.S. MAGISTRATE JUDGE
*ame and title*

## ATTACHMENT A

The property to be searched is:

1.  Dell Desktop computer; Service Tag Number:8JC4VV19 (SUBJECT DEVICE A);

2.  Two (2) external hard drives (SUBJECT DEVICES B);

3.  HP Pavilion desktop computer; S/N: 4CE22107SZ (SUBJECT DEVICE C);

4.  Samsung tablet computer (SUBJECT DEVICE D); and

5.  ONN tablet computer (SUBJECT DEVICE E).

The SUBJECT DEVICES are currently stored in a secure locker in the HOMELAND SECURITY INVESTIGATIONS OFFICE LOCATED AT 9875 REDHILL DRIVE, BLUE ASH, OHIO 45242.

This warrant authorizes the forensic examination of SUBJECT DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT B</u>

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. § § 2252 and 2252A:

1. Computers or storage media used as a means to commit the violations described above. For any computer or storage medium whose search of seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "SUBJECT DEVICES"):

    a.    evidence of who used, owned, or controlled the SUBJECT DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.    evidence of software that would allow others to control the SUBJECT DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.    evidence of the lack of such malicious software;

    d.    evidence indicating how and when the SUBJECT DEVICES were accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the SUBJECT DEVICES user;

    e.    evidence indicating the SUBJECT DEVICES user's knowledge and/or intent as it relates to the crime(s) under investigation;

    f.    evidence of the attachment to the SUBJECT DEVICES of other storage devices or similar containers for electronic evidence;

    g.    evidence of the use of an online cloud storage service;

h.      evidence of programs (and associated data) that are designed to eliminate data from the SUBJECT DEVICES;

i.      evidence of the times the SUBJECT DEVICES was used;

j.      passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICES;

k.      documentation and manuals that may be necessary to access the SUBJECT DEVICES or to conduct a forensic examination of the SUBJECT DEVICES;

l.      records of or information about Internet Protocol addresses used by the SUBJECT DEVICES;

m.      records of or information about the SUBJECT DEVICES Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

n.      contextual information necessary to understand the evidence described in this attachment.

2.      Routers, modems, and network equipment used to connect SUBJECT DEVICES to the Internet.

3.      Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

4.      Records, information, and items relating to violations of the statutes described above including:

a.      Records, information, and items relating to the ownership or use of SUBJECT DEVICES obtained from the residence, including sales receipts or bills for Internet access.

b.      Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

c.      Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Wallace, a Special Agent (SA) with Homeland Security Investigations, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and I have been so employed since May of 2005. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation.  I have additionally had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants, a number of which involved child exploitation and/or child pornography offenses.

2.     This affidavit is being made in support of an application for a search warrant for the following electronic devices which were seized on August 30, 2021, from a residence located at 40 North Green Street in Enon, Ohio by law enforcement authorities (collectively, the "SUBJECT DEVICES"):

      a.     Dell Desktop computer; Service Tag Number:8JC4VV19 (SUBJECT DEVICE A);

      b.     Two (2) external hard drives (SUBJECT DEVICES B);

1

      c.       HP Pavilion desktop computer; S/N: 4CE22107SZ (SUBJECT DEVICE C);

      d.       Samsung tablet computer (SUBJECT DEVICE D)

      e.       ONN tablet computer (SUBJECT DEVICE E)

The above electronic devices are currently located at the Department of Homeland Security, 9875 Redhill Drive, Blue Ash, Ohio, 45242, and as more fully described in Attachment A.

3.      The purpose of this search warrant request is to search and seize evidence stored on electronic media, more particularly described in Attachment B, which is considered to be violations of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess child pornography and access child pornography with intent to view it, and violations of 18 U.S.C. §§ 2252(a)(2)(B) and 2252A(a)(2), which make it a crime to receive and distribute child pornography. The items to be searched for and seized are described more particularly in Attachment B hereto.

4.      The statements contained in this Affidavit are based in part on my personal investigation of this matter and on information provided to me by other law enforcement agents.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have elected to set forth only those facts that I believe are necessary to establish probable cause to search for evidence of violations of 18 U.S.C. §§ 2252 and 2252A which is believed to be present within stored data located on the SUBJECT DEVICES.

5.      As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including

18 U.S.C. §§ 2252 and 2252A, are present within the stored data located on the SUBJECT DEVICES.

## STATUTORY AUTHORITY

6.      As noted above, this investigation concerns alleged violations of the following:

a.      18 U.S.C. § 2252(a)(1) and (b)(1) prohibit any person from knowingly transporting or shipping, or attempting or conspiring to transport or ship, any visual depiction using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer or mail, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

b.      18 U.S.C. § 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

c.      18 U.S.C. § 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or

3

access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

d.      18 U.S.C. § 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing, or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

e.      18 U.S.C. § 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

f.      18 U.S.C. § 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of

4

interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## **DEFINITIONS**

7.　　The following definitions apply to this Affidavit and Attachment B:

a.　　"Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

b.　　"Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.　　"Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

5

d.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices.  *See* 18 U.S.C. § 1030(e)(1).

e.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards.  Data security software may include programming code that creates "test" keys or "hot" keys,

which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.        "Encryption" is the process of converting data into a code in order to prevent unauthorized access to the data.

h.        The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i.        "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

j.        "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

k.        "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

l.        "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

7

m.      A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n.      "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.  URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

o.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

p.      A "Website" consists of textual pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## **BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE**

8.    HSI Phoenix is conducting an investigation into a popular social media platform that is commonly used to distribute child pornography on the internet, henceforth referred to as "SOCIAL MEDIA PLATFORM A".  SOCIAL MEDIA PLATFORM A is a secure social media and chat platform hosted outside the continental United States. An HSI Phoenix online

undercover agent was able to infiltrate a chat room on SOCIAL MEDIA PLATFORM A and observe images and videos of child pornography being distributed amongst members of the chatroom. One of the chatroom participants identified in that investigation was identified utilizing the IP address 162.154.195.63 on January 15, 2020, at 3:28 AM UTC.

9.     A public records database search determined that the IP address 162.154.195.63 is operated by Charter Communications. HSI Phoenix sent a DHS Summons to Charter Communication to determine the customer/subscriber assigned IP address 162.154.195.63 on January 15, 2020, at 3:28 AM UTC.  Charter Communications responded that IP address 162.154.195.63 on January 15, 2020, at 3:28 AM UTC was assigned to Dennis CARTER at 40 North Green Street in Enon, Ohio.

10.     HSI Phoenix forwarded this information to HSI Cincinnati.

11.     On August 30, 2021, HSI Cincinnati SA Christopher Wallace and SSA Cameron Bryant made contact with Dennis CARTER at 40 North Green Street in Enon, Ohio. SSA Bryant requested permission from CARTER to enter the residence and conduct a consensual interview and CARTER stated "Yes." SSA Bryant then confirmed that CARTER is the only resident at 40 North Green Street and has occupied the residence for approximately ten (10) years. SSA Bryant then read the DHS Statement of Rights form to CARTER and asked if CARTER was willing to sign the waiver and continue with the interview. CARTER stated, "Sure." CARTER then reviewed and signed the DHS Statement of Rights form.

12.     During the course of the interview, SSA Bryant asked if CARTER was aware of SOCIAL MEDIA PLATFORM A and CARTER responded, "Yes." SSA Bryant asked when the last time CARTER used SOCIAL MEDIA PLATFORM A. CARTER responded, "Last night."

9

SSA Bryant asked if CARTER had ever observed child pornography on the internet. CARTER responded, "Yes." SSA Bryant asked where on the internet CARTER had observed child pornography. CARTER responded "Through SOCIAL MEDIA PLATFORM A."

13.     During the consensual interview, CARTER also admitted to downloading and storing child pornography files. SSA Bryant asked CARTER where the child pornography files were stored. CARTER stated the child pornography files were accessed from or stored on SUBJECT DEVICE A, SUBJECT DEVICES B, SUBJECT DEVICE C, SUBJECT DEVICE D and SUBJECT DEVICE E.

14.     CARTER gave consent for the agents to take possession of the SUBJECT DEVICES. SSA Bryant and SA Wallace then took possession of the SUBJECT DEVICES.  CARTER was given a custody receipt for the SUBJECT DEVICES and SSA Bryant and SA Wallace departed the residence without incident.

**BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET**

15.     I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

    a.     Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography:  production, communication, distribution, and storage.

    b.     Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or

"Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos.

c.      A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types - to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer - can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

e.      The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.      Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide email services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g.      A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications, also referred to as "apps."  Apps consist of software downloaded onto mobile devices that enable users to perform a variety of tasks – such as engaging in online chat, sharing digital files, reading a book, or playing a game – on a mobile device.  Individuals commonly use such apps to receive, store, distribute, and advertise child pornography, to interact directly with other like-minded offenders or with potential minor victims, and to access cloud-storage services where child pornography may be stored.

h.      As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional (*i.e.*, by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional.  Digital

12

information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS CHILD PORNOGRAPHY

16.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who possess child pornography:

a.     Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.     Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

13

c.     Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d.     Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly.  Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.     Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals 'computers and digital devices through the use of forensic tools.  Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

f.       Such individuals also may correspond with and/or meet others to share

information and materials, rarely destroy correspondence from other child pornography

distributors/possessors, conceal such correspondence as they do their sexually explicit

material, and often maintain contact information (e.g. online messaging accounts, email

addresses, etc.) of individuals with whom they have been in contact and who share the

same interests in child pornography.

g.       Such individuals prefer not to be without their child pornography for any

prolonged time period.  This behavior has been documented by law enforcement officers

involved in the investigation of child pornography throughout the world.

h.       Even if the target uses a portable device (such as a mobile phone) to access the

Internet and child pornography, it is more likely than not that evidence of this access will

be found in his home, 40 North Green Street, as set forth in Attachment A, including on

digital devices other than the portable device (for reasons including the frequency of

"backing up" or "synching" mobile phones to computers or other digital devices).

17.     Based on all of the information contained herein, I believe that an internet user residing at

40 North Green Street likely displays characteristics common to individuals who possess child

pornography.  In this case, particularly, there is probable cause to believe that child pornography

exists on SUBJECT DEVICE A, SUBJECT DEVICES B, SUBJECT DEVICE C, SUBJECT

DEVICE D, and SUBJECT DEVICE E because CARTER was in possession of all five

SUBJECT DEVICES and told SA Christopher Wallace that all five SUBJECT DEVICES stored

and/or were used to access child pornography.

15

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

18.     As described above and in Attachment B, this application seeks permission to search the

SUBJECT DEVICES for evidence in whatever form they are found.  One form in which the

records are likely to be found is data stored on a computer's hard drive or other storage media.

Thus, the warrant applied for would authorize the search of the electronic storage media or,

potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

19.     I submit that for the SUBJECT DEVICES, there is probable cause to believe those

records referenced above will be stored on that computer or storage medium, for at least the

following reasons:

        a.      Deleted files, or remnants of deleted files, may reside in free space or slack

        space—that is, in space on the storage medium that is not currently being used by an

        active file—for long periods of time before they are overwritten.  In addition, a

        computer's operating system may also keep a record of deleted data in a "swap" or

        "recovery" file.

        b.      Based on my knowledge, training, and experience, I know that computer files or

        remnants of such files can be recovered months or even years after they have been

        downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files

        downloaded to a storage medium can be stored for years at little or no cost.  Even when

        files have been deleted, they can be recovered months or years later using forensic tools.

        This is so because when a person "deletes" a file on a computer, the data contained in the

        file does not actually disappear; rather, that data remains on the storage medium until it is

        overwritten by new data.

16

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.     CARTER admitted during an interview with SSA Cameron Bryant and SA Christopher Wallace that the SUBJECT DEVICES contained records of child pornography.

20.     As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on the SUBJECT DEVICES because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what

17

tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated

18

with user accounts, electronic storage media that connected with the computer, and the IP

addresses through which the computer accessed networks and the Internet. Such

information allows investigators to understand the chronological context of computer or

electronic storage media access, use, and events relating to the crime under investigation.

Additionally, some information stored within a computer or electronic storage media may

provide crucial evidence relating to the physical location of other evidence and the

suspect. For example, images stored on a computer may both show a particular location

and have geolocation information incorporated into its file data. Such file data typically

also contains information indicating when the file or image was created. The existence of

such image files, along with external device connection logs, may also indicate the

presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone

with an incorporated camera). The geographic and timeline information described herein

may either inculpate or exculpate the computer user. Last, information stored within a

computer may provide relevant insight into the computer user's state of mind as it relates

to the offense under investigation. For example, information within the computer may

indicate the owner's motive and intent to commit a crime (*e.g.*, Internet searches

indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program

to destroy evidence on the computer or password protecting/encrypting such evidence in

an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a

crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense. In this case, CARTER admitted during an interview that he used SUBJECT DEVICE A, SUBJECT DEVICES B, SUBJECT DEVICE C, SUBJECT DEVICE D, and SUBJECT DEVICE E to store and access child pornography.

21. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

22. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located on the SUBJECT DEVICES described in Attachment A. I respectfully request that this Court issue a search warrant for the SUBJECT DEVICES described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

23. I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital

21

evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items searched. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

_____
Christopher Wallace
Special Agent


Sworn and subscribed before me this 2nd day of September.

_____
Sharon L. Ovington
United States Magistrate Judge

22